UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JILL BROWNING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:19-CV-02395 JAR |
| | ) |
| APEX PHYSICAL THERAPY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Jill Browning filed this putative class action against Defendant Apex Physical Therapy ("Apex") on July 5, 2019 in the St. Louis County Circuit Court asserting claims for violations of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020, *et seq*. (Count I); Tortious Interference with Contract/Business Relationship (Count II); and unjust enrichment (Count III), all related to Apex's billing practices. Apex removed the case to this Court on August 23, 2019. On Apex's motion, this Court dismissed Plaintiff's claims for violations of the MMPA and unjust enrichment. (Doc. No. 15). Apex now moves for summary judgment on Plaintiff's only remaining claim, Tortious Interference with Contract/Business Relationship (Count II). (Doc. No. 24).

Plaintiff filed her opposition to summary judgment on September 14, 2020 (Doc. No. 35) and Apex filed its reply on September 23, 2020 (Doc. No. 37). On September 28, 2020, the Court granted Plaintiff leave to file a sur-reply. (Doc. Nos. 38, 39, 40). On October 2, 2020, Apex filed a motion for reconsideration of the Court's order granting Plaintiff leave to file her sur-reply and alternatively, a response to Plaintiff's sur-reply. (Doc. No. 42). Having considered Apex's

1

response to Plaintiff's sur-reply, the Court finds Apex's motion for reconsideration moot.

Also on October 2, 2020, the Court ordered Plaintiff to submit in writing what information on damages she hoped to uncover through discovery. (Doc. No. 41). Plaintiff filed a memorandum on discovery (Doc. No. 43), which Apex then moved to strike (Doc. No. 44). The Court ordered the parties to meet and confer to resolve discovery disputes. (Doc. No. 47). The parties supplemented their motions for summary judgment with the documents Apex turned over in discovery. (Doc. Nos. 49, 52). During mediation, Apex informed Plaintiff it had failed to turn over certain documents and gave Plaintiff a number of forms related to her intake as a patient. In December of 2020, the parties supplemented their motions in light of these additional documents. (Doc. Nos. 55, 58). Apex's motion for summary judgment is now fully briefed and ready for disposition.

**I.      Background**

Plaintiff is a St. Louis City resident who received physical therapy services from Apex between February 3, 2016 and March 7, 2016. (Complaint ("Compl.") at ¶¶ 16, 18). Plaintiff sought treatment as a result of a car accident that occurred on January 26, 2016. (Id. at ¶ 16). The other driver in the accident was at fault and Plaintiff recovered damages from that driver.

Regarding her claim of tortious interference, Plaintiff alleges that Apex wrongly communicated to her that the liability insurer of the other driver involved in the accident would pay her physical therapy bills; failed to inform her that Apex would seek payment directly from her; and failed to submit her physical therapy bills to her health insurer in a timely manner. Plaintiff further alleges that in so doing, Apex interfered and prevented her from receiving the benefit of her contractual relationship with her health insurer. Plaintiff alleges damages of: (1) the $5,381.00 Apex billed her (id. at ¶ 16); (2) the financial obligation she incurred as a result of Apex not billing

her health insurance, (id. at ¶ 29); and (3) harm to her credit score (id. at ¶ 30).

According to Apex, it attempted to collect payment for the services provided to Plaintiff by Apex from the liability insurance of the other driver in the accident but was unsuccessful. Apex asserts that on August 2, 2017, it communicated to Plaintiff's counsel that it would waive all fees owed by Plaintiff to Apex for services rendered. It is undisputed that Plaintiff has never paid Apex anything for the services she received, and that Apex has internally written off Plaintiff's debt. However, Plaintiff contends that Apex's internal write-off does not fully extinguish her legal obligation.

## II.     Legal standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## III.    Discussion

Apex raises two arguments in support of its motion for summary judgment: (1) Plaintiff lacks standing because she cannot show an injury in fact; and (2) Plaintiff's count of tortious interference of contract fails as a matter of law because she cannot show pecuniary damages. For the following reasons, the Court finds Plaintiff has failed to establish a concrete injury sufficient

3

to confer standing under Article III. Even if Plaintiff had standing, the Court would grant summary judgment in favor of Apex because Plaintiff has not shown pecuniary damages resulting from Apex's conduct.

### A. Standing

"Under Article III of the United States Constitution, federal courts may only adjudicate actual cases and controversies." Smith v. Golden China of Red Wing, Inc., No. 19-3518 (8th Cir. Feb. 17, 2021) (quoting Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1157 (8th Cir. 2008)). "The core component of the requirement that a litigant have standing to invoke the authority of a federal court is an essential and unchanging part of the case-or-controversy requirement of Article III." Id. (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006)).

To have Article III standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016); Dalton v. JJSC Props., LLC, 967 F.3d 909, 912 (8th Cir. 2020) (per curiam); Curry v. Regents of Univ. of Minnesota, 167 F.3d 420, 422 (8th Cir. 1999).

The injury-in-fact requirement requires a plaintiff to allege an injury that is sufficiently "concrete and particularized," and "actual or imminent, not 'conjectural or hypothetical.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted; alterations in original); see also Hillesheim v. Holiday Stationstores, Inc., 900 F.3d 1007, 1010 (8th Cir. 2018). Specifically, "[a] plaintiff must show that he 'sustained or is immediately in danger of sustaining some direct injury as the result of the challenged … conduct and that the injury or threat of injury

must be both real and immediate.'" JJSC Props., LLC, 967 F.3d at 913 (second alteration in original) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)).

When standing is challenged at the summary judgment stage, the plaintiff must submit affidavits or other evidence that demonstrate through specific facts that she has suffered an injury in fact. Lujan, 504 U.S. at 561; see also id. at 566 ("Standing ... requires, at the summary judgment stage, a factual showing of perceptible harm."); Hillesheim, 900 F.3d at 1010; Hargis v. Access Capital Funding, LLC, 674 F.3d 783, 793 (8th Cir. 2012). The plaintiff "must establish that there exists no genuine issue of material fact as to justiciability or the merits." DOC v. United States House of Representatives, 525 U.S. 316, 329 (1999) (citations omitted).

Apex argues that Plaintiff has suffered no "injury in fact" for purposes of Article III standing because she never paid Apex for its services and because all fees associated with the services provided her by Apex were waived in advance of this litigation. Apex proffers evidence, including a declaration from Steven Oravec, the Chief Operating Officer for Apex, attesting that: Apex has not received payment from Plaintiff for the services it provided her; Apex attempted to collect payments for the services it provided to Plaintiff from the insurance liability carrier of the other driver associated with Plaintiff's auto accident, but was unable to do so; Plaintiff was not billed directly for the services provided to her by Apex; and that on or about August 2, 2017, Apex communicated to Plaintiff, through her counsel, its agreement to waive all fees owed by Plaintiff to Apex for services rendered. (Doc. No. 26-4 at ¶¶ 5, 7, 8, 10). Apex also submits Plaintiff's Patient Case Ledger which shows a zero-balance owed by her to Apex. (Doc. No. 36-3). Apex argues the Patient Case Ledger shows it waived Plaintiff's fee on August 2, 2017, as evidenced by an entry in the ledger dated August 2, 2017, which says "per Amy added to data base and posted adjustment Lili." At that point entries indicating collection efforts cease.

5

In response, Plaintiff contends there is a genuine issue of material fact as to whether Apex waived her fees before or after the filing of this lawsuit. According to Plaintiff, neither she "nor her attorneys, ever received correspondence, or any other indication from Apex, at any time prior to the filing of this lawsuit, that Apex agreed to" waive her fees. (Doc. No. 36 at ¶ 18). Plaintiff argues that the Patient Case Ledger Apex relies on is dated May 27, 2020, after this lawsuit was initiated, suggesting Apex may have changed it after the lawsuit was filed.[1] (Id.). Finally, Plaintiff disagrees with the meaning Apex ascribes to the entry in the Patient Case Ledger dated August 2, 2017 and maintains that the entry is not Apex waiving Plaintiff's fee.

Plaintiff further argues that regardless of any internal "bookkeeping" write-off by Apex, she still has a legal obligation to Apex for $5,381.00. Specifically, she argues that if she "were to claim bankruptcy, she would be legally obligated under the bankruptcy code … to list Apex as a creditor, and Apex would have a right to make a claim," i.e., a right to payment. (Doc. No. 49 at ¶ 6). According to Plaintiff, it is this potential legal liability, created by Apex's billing practices, that is the injury in fact. (Doc. No. 35 at ¶ 8). Plaintiff cites Midland Funding v. Johnson, 137 S. Ct. 1407 (2017), for the proposition that a valid claim for payment may exist even after the original creditor wrote off the debt. (Doc. No. 49 at ¶¶ 5-6).

In Midland Funding, Midland Funding LLC submitted a proof of claim against a debtor who owed it a credit-card debt. Id. at 1411. The statute of limitations on the debt was six years, and Midland's proof of claim stated that the latest charge had occurred more than ten years before the debtor's bankruptcy. Id. The district court therefore disallowed the claim, and the debtor subsequently filed an adversary proceeding. Id. The Supreme Court concluded that Midland's

---

[1] Apex maintains that the May 28, 2020 date of the Patient Case Ledger Form is the print date and does not invalidate its evidentiary value. (Doc. No. 37 at 8).

6

filing of the time-barred claim was not "false, deceptive, or misleading" under the Fair Debt Collection Practices Act (FDCPA) because its proof of claim indicated on its face that the statute of limitations period had run and because the proof of claim was still a "claim" as defined in the Bankruptcy Code. Id. at 1411-12. The Court explained that under the state law relevant in Midland Funding (Alabama law), a creditor has a theoretical "right" to repayment – thus meeting the literal definition of a "claim" under the Bankruptcy Code, see 11 U.S.C. § 1015(5)(A)[2] – even after the statute of limitations has passed.

Even assuming Plaintiff has a legal obligation of the type she describes, she has not demonstrated an injury that is either actual or imminent. "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is *certainly* impending." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (quoting Lujan, 504 U.S. at 565, n.2 (internal quotation marks omitted). The Supreme Court has repeatedly reiterated that "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of *possible* future injury" are not sufficient. Id. (citing cases). Here, it is undisputed that Plaintiff has never paid Apex anything for the services she received and that Apex has internally written off Plaintiff's debt. Plaintiff's theory of standing relies on a speculative "chain of possibilities," i.e., that she files for bankruptcy at some point in the future and that Apex then asserts a "right" to repayment in her bankruptcy proceedings or otherwise attempts to recover her debt, a debt that it

---

[2] The Court noted the word "enforceable" does not appear in the Code's definition of "claim." Section 101(5)(A) says that a "claim" is a "right to payment," "whether or not such right is ... fixed, *contingent,* ... [or] *disputed*." If a contingency does not arise, or if a claimant loses a dispute, then the claim is unenforceable. Yet this section makes clear that the unenforceable claim is nonetheless a "right to payment," hence a "claim," as the Code uses those terms. 137 S. Ct. at 1412.

7

has written off. This does not satisfy the requirement that a threatened injury must be "certainly impending." See Summers v. Earth Island Institute, 555 U.S. 488, 496 (2009) (rejecting a standing theory premised on a speculative chain of possibilities); Whitmore v. Arkansas, 495 U.S. 149, 157-60 (1990) (same). Standing will not be found in cases where injury is no more than speculative.

For these reasons, the Court cannot find a sufficiently concrete injury for purposes of Article III standing. Therefore, this Court lacks subject matter jurisdiction over Plaintiff's claim for tortious interference. Because the Court lacks subject matter jurisdiction, it does not reach the question whether Plaintiff established the requisite damages element necessary for her tortious interference claim to survive summary judgment.

**B.  Remand**

When it becomes clear a case originally filed in federal court does not belong there because the plaintiffs lack Article III standing, generally the appropriate remedy is to dismiss without prejudice. See, e.g., Constitution Party of S.D. v. Nelson, 639 F.3d 417, 420 (8th Cir. 2011). If, on the other hand, the case did not originate in federal court but was removed there by the defendants, the federal court *must* remand the case to state court, where the plaintiff originally filed it. See Wallace v. ConAgra Foods, Inc., 747 F.3d 1025, 1033 (8th Cir. 2014) ("If ... the case did not originate in federal court but was removed there by the defendants, the federal court must remand the case to the state court from whence it came [i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.") (quoting 28 U.S.C. § 1447(c)) (internal quotation marks omitted); Hughes v. City of Cedar Rapids, Iowa, 840 F.3d 987, 993 (8th Cir. 2016). See also St. Louis Heart Ctr., Inc. v. Nomax, Inc., 899 F.3d 500, 505 (8th Cir. 2018) (explaining that the lack of federal jurisdiction does not obviate the remand requirement of § 1447(c), because state courts are not bound by the limitations of an Article III case or controversy).

Because this case began in the Circuit Court for the 22nd Judicial Circuit, St. Louis City, Missouri, that is where this case must return.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that this case is remanded to the Circuit Court for the 22nd Judicial Circuit, St. Louis City, Missouri for all further proceedings.

**IT IS FURTHER ORDERED** that all other pending motions in this case are **DENIED** without prejudice as moot.

Dated this 22nd day of March, 2021.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**